### BOWMAN et al. v. DUBUQUE FIRE & MARINE INS. CO.
#### Civ. A. 3669.

United States District Court
W. D. Louisiana, Shreveport Division.
Aug. 16, 1952.

Supplemental Opinion Nov. 13, 1952.

Tooke & Tooke, Shreveport, La., for plaintiffs.

P. A. Bienvenu, Bienvenu & Culver, New Orleans, La., for defendants.

DAWKINS, Chief Judge.

This suit was filed in the State Court for Caddo Parish, Louisiana, and removed here by the defendant on the ground of diverse citizenship. It is upon a policy of insurance alleged to cover the theft of a machine or device called an "Attractometer", the court gathers from the argument, used in some manner supposed to aid in the discovery of oil before drilling. The amount demanded is $25,000, plus twenty percent as penalties and attorneys' fees for failure to pay within the time provided by the State Law. The plaintiffs are Lee Bowman, alleged inventor, a citizen of California, Joe M. Harper, Jr., W. C. O'Ferral and L. M. Moffitt, citizens of Louisiana, while the defendant is described only as a "foreign insurance corporation authorized to do business in the State of Louisiana"; however, in removing the case, the defendant disclosed that it is a citizen of Iowa.

Shortly after its removal, counsel for the defendant gave notice of the intention to take the testimony of the plaintiffs on May 7, 1952, at 296 Wall Street, Shreveport, Louisiana, before a named Notary Public, and requested that the plaintiffs bring with them, or produce at that time and place, "all the drawings and specifications and information, secret or otherwise, with reference to the attractometer insured by the policy contract made the basis of the above suit, including all records deposited in a lockbox leased from the Commercial National Bank in Shreveport, Louisiana", to be used during the taking of the testimony. Plaintiffs moved to limit the scope of the examination, first because Moffitt was "confined to his home and bed with a serious heart ailment", and it would be extremely dangerous for him to have to appear; that he could furnish only a limited amount of information and the same could be amply covered by interrogatories.

On the part of Bowman, it was set forth in the motion to limit that he is in the State of California and "has no plans at this time" to come to Louisiana; that he could appear only "at an unusual and disproportionate expense to himself, both in time and travel charges", and that he "is ready, able and willing to answer any interrogatories at his residence, or in person, wherever he may be". He further sets forth that his testimony was taken at length in the City of Shreveport before the same Notary on September 7, 1951, in this particular proceeding; that the examination was exhaustive and "covered the information available to the defendant, which could be provided by Bowman", and for this reason also his testimony should be taken by interrogatories.

Further, that the plaintiffs should not be required to produce the documentary evidence, and particularly the secret matters in the lockbox in the Bank, for the reason that the device is not patented and it would expose highly valuable secret information to the public without protection.

The prayer of the motion to limit was in accord generally with the contentions thus stated.

When the court came to consider the matter, it found that while all of these points, including the coverage of the policy, were thoroughly argued in the briefs, in addition to oral argument, the policy has not been produced or placed in the record to enable it to determine, as a matter of law, its coverage and therefore the rele-

vancy of evidence of the kind sought by the defendant. Plaintiffs contend that they are suing solely for the labor and material which went into the device, whereas defendant claims that the policy, by its terms, is restricted to the actual cash value of the physical machine or device and that whether it has any value as an invention to successfully discover oil will be determined largely upon what it is, and how it does work or will work in the judgment of experts versed in this particular branch of the industry. Defendant says that even though One Hundred Thousand Dollars may have been expended before the machine was finally perfected, if it has no present value for the purposes intended, then plaintiffs have not suffered any loss within the coverage of the policy.

The record therefore is returned to the Clerk, with instructions to furnish counsel on either side a copy of this memorandum in order that they may by stipulation or otherwise, provide and file in the record the policy of insurance or any other matter that may more clearly disclose the issues which will be tried on the merits. When this has been done, the matter can be resubmitted.

### Supplemental Opinion.

This case was returned to the calendar on August 16, 1952, in order that the policy sued on could be produced and filed in the record. In the memorandum delivered at that time, the court stated the question involved, and it will not be repeated here.

The policy has been produced and it contains the following clause:

"Unless otherwise provided in form attached, this Company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and quality."

No other provision in conflict with that limiting the recovery to the cash value of the instrument or what it would cost to "replace the same with material of like kind and quality" is found in the policy. It seems essential, therefore, that the defendant be permitted to take the testimony of the plaintiffs and that they should produce "all drawings and specifications and information, secret or otherwise, with reference to the Attractometer insured by the policy * * * including all records deposited in a lockbox leased from the Commercial National Bank in Shreveport, Louisiana". This appears to be necessary in order that the defendant may be able to establish, through experts, other witnesses and evidence, the actual cash value of the instrument alleged to have been stolen.